STATE ex Rel. O'NEILL, Respondent, v. MAYOR OF CITY OF BUTTE, Appellant.

(No. 7,211.)

(Submitted March 7, 1934. Decided March 21, 1934.)

[30 Pac. (2d) 819.]

*Mr. Edwin M. Lamb,* for Appellant, submitted a brief and argued the cause orally.

*Mr. P. E. Geagan* and *Mr. E. W. Pool,* for Respondent, submitted a brief; *Mr. Geagan* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment ordering the issuance of a writ of mandate directed to the mayor of the city of Butte commanding him to submit to the city council the name of Herbert O'Neill for confirmation of his appointment as a member of the police department of the city, and to forbear denying him an opportunity to perform such duties as ''he may be required by law to perform in the use and enjoyment of said office.''

Section 5096, Revised Codes 1921, provides: ''The mayor of all cities and towns shall have charge of and supervision over the police department thereof. He shall appoint all the members and officers thereof. Subject to the provisions of this Act, he shall have the power to suspend or remove any member or officer of the force. He shall make rules and regulations, not inconsistent with the provisions of this Act, the other laws of the state, or the ordinances of the city or town

council, for the government, direction, management, and discipline of the police force."

Section 5097, as amended by section 2, Chapter 119, of the Laws of 1923, reads: "All appointments to the police force must be appointed by the mayor and confirmed by the city council, but no such appointment must be made, until an application for such position on the police force has been filed with the mayor, and by him referred to the Police Commission, where such commission exists, and such applicant has successfully passed the examination required to be held by such Police Commission, and a certificate from such Police Commission that the applicant has qualified for such appointment has been filed with the mayor. Every applicant who has passed such examination and received such certificate must first serve for a probationary term of not more than six months. At any time before the end of such probationary term, the mayor may revoke such appointment. After the end of such probationary period, and within thirty days thereafter, the appointment of such applicant must be submitted to the City Council, and if such appointment is confirmed by the City Council, such applicant becomes a member of the police force, and shall hold such position during good behavior, unless suspended or discharged as provided by law."

Section 5099, as amended by Chapter 119, supra (sec. 3), provides in part that an applicant for a position on the police force whose application shall have been referred to the police commission "shall be required successfully to undergo an examination before the Police Commission, and to receive a certificate from said Commission that the applicant is qualified for such appointment for the probationary period upon the police force."

The record upon such testimony as was properly admitted is not clear. It appears, however, that the relator, a citizen and an elector of Butte during the year 1930, submitted an application for a position on the police force to the mayor of the city. While there is no direct testimony on the point, it is inferable that the mayor, Honorable M. Kerr Beadle, referred

the application to the police commission, for on a page of the record of the "Examining Board and Police Commission," dated December 1, 1930, it is recited that "the following named persons submitted applications for positions upon the Police Department," naming Herbert O'Neill, and two others. Following the recitation, "after examination by the board," the unwarranted statement appears that the three applicants "were placed upon the eligible list," and the mayor was "ordered to place them on the eligible list by an official notification by the board." Perhaps this contemplated the issuance of the certificate which the statute requires. Whether the police commission ever filed with the mayor, or issued to O'Neill, the certificate required, does not appear.

Mayor Beadle testified that the police commission "recommended that the applicant passed the examination and that he be placed on the eligible list, and I placed him there."

The records do not show that any probationary period was fixed by the city council, but it would seem that the practice of the mayor and council was to consider the six months named in the statute the probationary period.

The records of the city do not show any appointment of the relator as a member of the police force. He testified that he went to work on January 10, 1931, and was laid off on the thirtieth day of June, 1931. He was asked whether he took an oath of office before the city clerk. This was objected to by the city attorney as not the best evidence, for the reason that an oath of office in this state is required to be in writing. The court overruled the objection. Relator answered that he took the oath before the city clerk. The records in the city clerk's office do not show that Mr. O'Neill ever took or filed an oath of office. However, the city issued to him five warrants, amounts not stated.

Mayor Beadle testified that, when his office as mayor expired, which was on the first Monday of May, O'Neill had put in about four months of his probationary period, and had a month or two of the period yet to serve.

When Mayor McTaggart assumed office on the first Monday of May, 1931, he did not find in the mayor's office, or elsewhere in the records of the city, any document respecting O'Neill, except the "one in the records of the examining board." He said, "I tried several times to find something but never could find anything." With respect to the termination of O'Neill's services, the mayor said he "laid him off the last of June," and since that time he had not appointed any police officer.

Section 5097, as amended, is not clear. It says at the beginning that "all appointments to the police force must be appointed by the Mayor and confirmed by the City Council." But the necessary inference is that as preliminary to an applicant's becoming a member of the police force he must file with the mayor an application which the mayor must refer to the police commission. If the applicant successfully passes the examination, the police commission must issue a certificate to the effect that the applicant has qualified for appointment, and must file that certificate with the mayor and must issue one to the applicant. Thereupon the applicant must serve a probationary term of not more than six months. At any time before the end of the probationary term the mayor may revoke the "appointment." Within thirty days after the end of the probationary period the appointment of the applicant must be submitted to the city council; and, if such appointment is confirmed by the city council, the applicant becomes a member of the police force.

The "appointment" prior to the confirmation by the city council, if such it can be called, refers only to the probationary period during which the mayor may exercise the right to revoke the appointment and cut off the applicant's right of service with the department. Such action by the mayor is a discharge of the applicant from the police force.

The clerk of the police department, who is the custodian of the books therein, testified that the relator signed the registry book twice, once on March 28, 1931, his first registration,

and on June 30, 1931, his last. The pay-roll is made up from that book.

The assistant city clerk has the custody of the records of the city council. During the period beginning with December 1, 1930, and ending on the first Monday in May of 1931, the records do not disclose anything with respect to the relator, not even that an oath of office was taken by him. As noted above, it does not appear that any certificate was issued to the mayor respecting relator's qualifications, or that one was issued to the relator. The findings placed upon the commission's record book do not constitute the certificate contemplated by the statute. The action of Mayor McTaggart's cutting off relator's services with the police department undoubtedly was intended to and did amount to a revocation of the appointment of the relator to the eligible list, if it can be said that any such appointment was made. We shall assume that in effect such appointment was made, and by the same token we conclude that the appointment was revoked.

In this discussion we have not overlooked *State ex rel. Bennetts* v. *Duncan, Mayor,* 47 Mont. 447, 133 Pac. 109, which was decided before sections 5097 and 5099 were amended. That case has no application upon the conditions presented in this.

Unless relator shows that he has a clear legal right in himself to the relief prayed for, and that there has been a violation of duty by the mayor in the premises, this proceeding does not lie. (*State ex rel. Cutts* v. *Hart,* 56 Mont. 571, 185 Pac. 769, 7 A. L. R. 1678; *State ex rel. Duggan* v. *District Court,* 65 Mont. 197, 210 Pac. 1062.)

In the exercise of local self-government the court should not interfere with the local administrative officers unless it clearly appears that the right of a citizen is being interfered with or denied. The mayor, as the officer having charge and supervision of the police department under the Metropolitan Police Law, should have a free hand, unless otherwise controlled by law, in recommending to the city council persons for a permanent position on the police force.

Being convinced that the relator has not shown that he is entitled to the enjoyment of a right of office from which he is unlawfully precluded by the mayor, or that the mayor has refused to perform an act which the law specifically enjoins upon him as a duty resulting from his office, we think the district court erred.

The judgment is reversed and the district court of Silver Bow county is directed to dismiss the proceeding.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.