# HORVATH, Appellant, v. MAYOR OF THE CITY OF ANACONDA, Respondent.

(No. 8,176.)

(Submitted May 28, 1941. Decided June 24, 1941.)

[116 Pac. (2d) 874.]

Cause submitted on briefs of counsel.

*Mr. Roy A. Michaud,* for Petitioner.

*Mr. Sid G. Stewart,* for Defendant.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This action had its inception in a petition for an order to show cause directed to the mayor of the city of Anaconda under the provisions of Chapter 66 of the 1937 Session Laws, commonly known as the Veterans' Preference Act. That chapter provides in general that in any city, or county, and in every public department and upon all public works in the state of Montana, honorably discharged veterans of the world war and certain other wars shall be preferred in making appointments when the veteran "is in fact qualified physically, mentally and possesses business capacity, competence and education to discharge the duties of the office applied for."

Relator, an honorably discharged war veteran, filed an application for a position as a patrolman in the police department in the city of Anaconda. It seems clear that there was no vacancy existing at the time, and further that though the petition alleges that subsequently a vacancy or vacancies did occur which were filled by the appointment of others the city council of the city of Anaconda had not created an eligible list as the statutes provided it could do. This application was given to the city clerk, who in turn transmitted it to the police commission of the city. The defendant, hereafter referred to as the mayor, had no knowledge of this latter fact at the time. The commission took cognizance of the application, and after an examination of relator by it and by the city physician the commission certified that relator was competent, etc., to be a patrolman. Subsequently a similar application was given by the relator to the mayor, but that application was not presented to the commission by him. The petition asked for an order re-

quiring the mayor to appoint him as a patrolman, or requiring the mayor to submit his application to the commission.

The finding on which the trial court based its action is No. 6, which is as follows: ''That the application of the petitioner for appointment as a member of the police department of the City of Anaconda has never been referred to the Police Commission by the Defendant, Ralph E. Thorson, Mayor of the City of Anaconda, and hence the Police Commission of Anaconda has never had up to the time of the hearing of this petition, the right or duty to examine the petitioner for a position upon the police department of the City of Anaconda. The application of the petitioner was handed to the Chairman of the Police Commission by Jake Kenne, the City Clerk of Anaconda at the request of Mr. Horvath. The said city clerk was never instructed by the Mayor to refer the application of the petitioner to the Police Commission. The name of the petitioner was never certified to the Police Commission by the Mayor and the action of the police commission in this case was a nullity.''

The court concluded as a matter of law that since no action had been taken by the mayor the action of the commission was without effect and that petitioner had no right to compel defendant to submit his application to the commission. This appeal is from the judgment based on those conclusions.

Relator's view is that in effect the act of the city clerk in transmitting the application to the police commission was the act of the mayor, and even if it were not relator could ignore the mayor and could secure a place on the police reserve by applying directly to the police commission, or that, if he could not be placed on the reserve, he could make his application to the police commission and secure its certificate and in that case when a vacancy occurred that the mayor must appoint him as an active patrolman. And further that when a veteran files his application with the mayor, the mayor must transmit it to the commission, and once the certificate is issued the mayor is bound by it as to the veteran's qualifications.

On the trial evidence was introduced over objection that controverted the certificate of the commission as to the relator's physical capacity to fill the position sought.

We do not think that the act of the city clerk in transmitting relator's application to the police commission was in law the act of the mayor. The statutes do not contemplate that these applications be transmitted to the police commission by the clerk unless so ordered by the mayor. Section 5097, Revised Codes, specifically provides that the application shall be filed with the mayor "and by him referred to the Police Commission." The clerk's act could not bind the mayor, and it is the testimony of the clerk that he had been but recently appointed to the position and that his act was a mistake on his part.

Nor may an applicant for a position on the police force ignore the mayor in making his application. To hold otherwise would require that we give no effect to the provisions of the statutes.

Section 5097 provides: "All appointments to the police force must be appointed by the mayor and confirmed by the city council, but no such appointment must be made, *until an application for such position on the police force has been filed with the mayor, and by him referred to the police commission,* where such commission exists, and such applicant has successfully passed the examination required to be held by such police commission, and a certificate from such police commission that the applicant has qualified for such appointment has been filed with the mayor."

This section is so plain that it should need no discussion. The action of the mayor must precede that of the commission and where that is not the case, the action of the commission is a nullity. (*State ex rel. O'Neill* v. *Mayor of City of Butte,* 96 Mont. 403, 80 Pac. (2d) 819.)

Since the action of the commission is of no effect under the circumstances here set out, relator's argument that the court erred in admitting testimony contravening the board's certificate that the relator was qualified for the position, has no force.

Must the mayor transmit every application received by him to the police commission? It is the mayor's view that whether or not an application is to be transmitted to the commission rests in his sound discretion. For example, if no vacancy exists in the police force, or in the reserve or eligible lists where they exist, it is his view that he need not transmit any applications. It is also his view that even though a vacancy does exist he need not transmit every application to the police commission, and also this is true where an applicant is a veteran. A reading of the statutes supports his view.

It would seem pointless to provide that all applications for positions on the police force be made to the mayor, if the mayor has no power to refuse to transmit an application to the police commission. To hold that in every circumstance he must transmit the application would reduce the reception and transmission of the applications to a routine clerical act. That type of action is not ordinarily delegated to an official holding a position of the dignity of a mayor. It would seem that, if every application is to reach the police commission, the statute would have provided that the applications be made directly to the police commission. The statutes give to the mayor the right to make the appointments. The language of the statute, section 5097, that "no such appointment must be made until an application for such position on the police force has been filed with the mayor" etc., indicates that the legislature contemplated that applications only should be received and transmitted when a vacancy existed or one was to be reasonably anticipated, where no eligible list has been established by the city council.

It may also be noted that the record here discloses that a meeting of the police commission costs the taxpayers at least $30. In the absence of a clear provision of the statute otherwise it would seem that this court should not so interpret section 5097 as needlessly to increase the financial burden of the city by requiring the reference of applications to the police commission where no vacancy exists or may reasonably be contemplated. There can be no doubt that the mayor need not

submit applications for positions on the police force when there is no vacancy to be filled.

Nor does it seem that the mayor must submit every application to the commission even where a vacancy exists. The first reason for that view we have already expressed, i. e., that applications be made to the mayor, the official who ultimately makes the appointment. This alone indicates that it rests within the sound discretion of the mayor to determine whether or not an application shall be referred to the commission. Ultimately he chooses from among those receiving the certificate of the police commission the person to fill the vacancy. The final choice as to which candidate is better qualified rests with him. Of those making application for the position there may be some who for very obvious reasons, such as their physical condition, are not qualified for the position, and who, in all likelihood, would not receive the certificate of the commission. It would seem that there would be no good purpose served to require the mayor to transmit their applications to the commission. In some cases the applicant might be successful in receiving the certificate, but the mayor might be, as in this case, convinced that the applicant is not qualified, and therefore even though the applicant received the certificate he would still not get the appointment because the mayor would choose from among the others who held the certificate.

It is true that in this case, as it is presented to us, the only holder of the certificate apparently is the relator. On the other hand, it also appears that no vacancy exists and it seems obvious that when a vacancy occurred there would be other applicants among whom probably some would stand in the same position as the relator herein, and that in the ordinary case the mayor making his final appointment would choose among several.

Again the language last above quoted from section 5097 would seem to indicate that the legislative intent was merely to limit the mayor in making his appointments so that an appointment could not be made until and unless the applicant had received the certificate of the police commission so as to

assure that no person would be appointed who did not have certain minimum qualifications to be determined by the commission.

Do the provisions of Chapter 66, 1937 Session Laws, change ▮ the effect of section 5097 so far as the particular point is concerned? It is argued by relator that if the mayor may refuse to transmit the application of a veteran to the commission, then the benefits intended to be conferred by Chapter 66 are nullified. With this view we do not agree. In the case of other applicants, the mayor may reject them on any basis he chooses. That is not the case of those who are preferred under the statute. Where an application is made by a veteran and a vacancy exists, then unless the mayor on reasonable investigation is convinced that the applicant is not qualified for the position as set out in Chapter 66, he must transmit the application to the commission.

Upon the filing of the application of relator, the mayor could not arbitrarily ignore it were there a vacancy to be filled. It became the mayor's duty if there were a vacancy to give preference to the application of a veteran if the veteran were qualified for the position within the contemplation of the statute. Whether or not he was qualified was a matter which the mayor had a right to be determined before submitting the application. He had a discretion to exercise, and absent a showing that he acted arbitrarily or otherwise abused that discretion this court will not interfere. (*International Business Machine Corp.* v. *Lewis and Clark County*, 111 Mont. 384, 112 Pac. (2d) 477.)

While the reference of the application to the commission is not an appointment in the true sense of the word, yet what is said in the following quotations as to appointment is applicable here in discussing the discretionary power of the mayor.

See 43 Corpus Juris, page 612, where it is said: ''The power ▮ to appoint carries with it a presumption that the appointing power is also, necessarily, discretionary. The determination of the appointing board or officer as to the qualifications of applicants involves official discretion, and, when made fairly and in good faith, is final.'' This also applies where there

is a Veterans' Preference Act. "Under a statute giving a veteran preference over others of equal qualifications, the appointing power must investigate in good faith, fully consider, and honestly pass upon the qualifications of respective candidates for a position for which a veteran is a candidate. And where a nonveteran is appointed to a municipal position over a veteran applicant, after hearing as to qualifications by the appointing power, such appointing will not be set aside under such a statute unless there is a clear showing of abuse of discretion. And even where the statute merely provides that a veteran shall be preferred for appointment or employment, it is held that the duty to appoint carries with it the duty to determine that the appointee possess the requisite qualifications for office, and, therefore, the appointing power is authorized to refuse to appoint one who lacks the necessary qualifications. No notice or formal hearing is required to determine the competency of a veteran, and, when the appointing power considers such proof of competency as is furnished by the applicant with such personal knowledge as may be possessed and information as may be acquired, the decision as to the competency is final." (43 C. J. 610.)

As part of his answer, the mayor questioned relator's capacity to fill the position in question. Upon the trial the mayor testified that he had investigated into relator's physical condition and determined that relator was not able to handle the job of patrolman. His testimony is that he made this investigation by inquiring from persons for and with whom relator worked and others, and that he determined that relator was suffering from a back injury for which he was seeking compensation. The inquiry showed this back injury was subject to recurrence and that by reason of it in making application for work on the W. P. A. relator had asked for light work and was given it. Upon trial the testimony as to the fact of the back injury was controverted. The mayor testified that he had concluded, considering the nature of a patrolman's work, that he did not think relator qualified physically for the position. The record shows that the investigation was reasonably calculated

to determine relator's qualifications and the conclusion the mayor reached was not the result of arbitrary, fraudulent or unlawful action on his part within the decisions of this court. (*International Business Machine Corp.* v. *Lewis and Clark County,* supra.) Therefore the trial court correctly held, even though there was evidence upon the trial that relator was qualified to fill the position of patrolman, that since the mayor's action was in the exercise of his discretion, and since his action was not unlawful, arbitrary or fraudulent, he could not be coerced by the action of the court.

Accordingly the judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Angstman, Anderson and Morris concur.

Rehearing denied September 29, 1941.