No. 13166

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

TERRY SCHEND,

Plaintiff and Appellant,

-vs-

JOHN M. THORSON, Mayor,
of the City of Whitefish, Montana,

Defendant and Respondent.

---

Appeal from:   District Court of the Eleventh Judicial District,
Honorable Robert Keller, Judge presiding.

Counsel of Record:

For Appellant:

Astle and Astle, Kalispell, Montana
William Astle argued, Kalispell, Montana

For Respondent:

Leo Fisher argued, Whitefish, Montana

---

Submitted:  March 3, 1976

Decided: MAY 7 1976

Filed: MAY   3/0

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order issued in the eleventh judicial district, Flathead County, dismissing petitioner's request for writ of mandamus made pursuant to section 93-9102, R.C.M. 1947. At the time the petition was filed, appellant Terry Schend was a probationary full-time police officer for the city of Whitefish, and respondent John M. Thorson was the mayor. The matter was heard in district court on April 17, 1975, and judgment for the respondent was entered several months later.

In lieu of a transcript, the record on appeal has been transmitted to the Court as an "Agreed Statement of Evidence" in accordance with Rule 9(c), Montana Rules of Appellate Procedure.

From this document, it appears that the appellant was appointed to the position of police officer for the city of Whitefish on October 8, 1974. The city of Whitefish is a third class city in the state of Montana within the meaning of section 11-1824 et seq., R.C.M. 1947, the "Metropolitan Police Law." As such, and pursuant to the authority contained therein, the community of Whitefish has placed itself within the purview of the Metropolitan Police Law through the adoption of Chapter 2.44.010, Whitefish Municipal Code, which provides as follows:

> "From and after the passage and approval of the ordinance codified herein, and from and after the effective date of the ordinance as codified herein, and the police department of the city, shall be under and within the provisions of the Metropolitan Police Law of the state. The police department of the city shall be organized, managed, conducted and controlled as in the state law and this chapter provided."

Chapter 2.44.040 of the Whitefish Municipal Code, provides that all applicants for the position of police officer must be appointed by the mayor and confirmed by the city council, but only after the applicant has successfully passed an examination, and a

certificate of qualification has been filed with the mayor. The applicant is then eligible to serve a "probationary period" as a police officer which may not exceed six months. Chapter 2.44.040 also provides the means by which an appointment may be revoked by the mayor:

> " * * * At any time before the end of such pro-
> bationary period the mayor may revoke such appoint-
> ment. After the end of such probationary period,
> and within thirty days thereafter, the appoint-
> ment of such applicant must be submitted to the
> city council, and if such appointment is confirmed
> by the city council, such applicant becomes a
> member of the police force of the city, and shall
> hold such position during good behavior, unless
> suspended or discharged as provided by law."

The above-cited section is almost identical to section 11-1803, R.C.M. 1947, except that the state law was amended in 1973 to extend the maximum possible probationary term from six months to one year. The parties are in complete agreement that under the statute and code section cited above, and under the rule followed by a majority of jurisdictions, that the legislature may validly authorize the removal of a probationary public employee or officer in a summary fashion, without necessity of cause or hearing. State ex rel. Nagle v. Sullivan, 98 Mont. 425, 40 P.2d 995.

On February 28, 1975, almost five months since his appointment, Schend received a letter from respondent Thorson placing him on notice that his appointment to the police force would be revoked as of March 15, 1975. The letter also contained certain statements regarding the appellant's performance as a police officer:

> "Due to your performance of duty, attitude towards
> and lack of desire to cooperate with those in
> charge * * * your services will no longer be re-
> quired or desired in your capacity as a member
> of the Whitefish Police Department."

The appellant, pursuant to section 11-1806, R.C.M. 1947, requested a hearing before the Whitefish Police Commission. This

request was denied.

From this summary of stipulated facts emerges but one single issue of constitutional law. Does the mayor of a city, which is subject to the provisions of a Metropolitan Police Law, and which grants the authority to discharge a police officer summarily during his period of probation, violate the due process clause of the Fourteenth Amendment to the United States Constitution when the notice of termination is accompanied by a statement of reasons for letting him go and no opportunity to dispute this statement is provided? We answer this question negatively.

A similar question has been treated by the United States Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 570, 573, 577, 92 S.Ct. 2701, 33 L ed 548. The court held in that case that the claimed right of a state teacher to a hearing prior to the nonrenewal of his employment agreement did not come within the purview of the concept of due process when that teacher has not achieved the status of tenure. In rendering its decision, the United States Supreme Court devoted a considerable portion of its opinion to discussing what frame of reference is properly employed in determining issues of procedural due process. In Roth, the federal district court committed error when it reduced the issue to a mere balancing or weighing of the interests involved --that is the employer's interest in denying reemployment summarily, as opposed to the employee's interest in reemployment. The court was careful to point out that while the balancing process is essential to the determination of what form a required hearing must take in a particular situation, the question of whether or not due process requirements are applicable at all demands a different type of analysis:

> " * * * But, to determine whether due process re-
> quirements apply in the first place, we must look

not to the 'weight' but to the nature of the
interest at stake. * * * We must look to see
if the interest is within the Fourteenth
Amendment's protection of liberty and property."

See also Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780,
28 L.Ed. 113. This essential distinction in analysis is one
which cannot be ignored by this Court in light of the ques-
tion presented.

The due process right to hearing was intended to provide
an opportunity for a person to vindicate only those claims to
which they are legitimately entitled. In Roth, the United
States Supreme Court could not sustain the teacher's Fourteenth
Amendment claim, because he failed to show how the decision not
to rehire, deprived him of an interest in "liberty" despite his
lack of tenure or formal contract. Perry v. Sindermann, 408
U.S. 593, 92 S.Ct. 2694, 33 L.Ed. 570. In doing so, however, the
court, in Roth, left no doubt as to the possibility that such a
showing could be made in a future case:

"The State, in declining to rehire the respondent,
did not make any charge against him that might
seriously damage his standing and associations in
his community. * * * Had it done so, this would
be a different case. For '[w]here a person's good
name, reputation, honor, or integrity is at stake
because of what the government is doing to him,
notice and an opportunity to be heard are essential.'
[Citing cases.] In such a case, due process would
accord an opportunity to refute the charge before
University officials. * * *" (Emphasis added.)

We take judicial notice that there is no substantial dif-
ference between the status of a nontenured teacher and that of a
probationary police officer.

Due process adjudication involves typically two analyti-
cally distinct issues--whether the right of due process is appli-
cable in the first instance; and if so, what specific procedures
are "due" in each case. The right itself only becomes applicable
where ones "property" or "liberty" interests within the meaning
of the Fifth or Fourteenth Amendment are at stake. Whether an

- 5 -

individual's "entitlement to employment" is sufficient to give

rise to a Constitution's claim becames the threshhold question

in these types of cases.

In <u>Roth</u>, the court held:

" * * * To have a property interest in a benefit,
a person clearly must have more than an abstract
need or desire for it.  He must have more than a
unilateral expectation of it.  He must, instead,
have a legitimate claim of entitlement to it.  It
is a purpose of the ancient institution of prop-
erty to protect those claims upon which people
rely in their daily lives, reliance that must
not be arbitrarily undermined.  It is a purpose
of the constitutional right to a hearing to pro-
vide an opportunity for a person to vindicate
those claims.

"Property interests, of course, are not created
by the Constitution.  Rather, they are created
and their dimensions are defined by existing rules
or understandings that stem from an independent
source such as state law--rules or understandings
that secure certain benefits and that support
claims of entitlement to those benefits. * * *"

Here the nature of the interest is the right to a job

as a policeman.  Can this be said to be encompassed within the

terms "liberty" or "property"?  We think not.

The very nature of the concept of property is not and

was not intended to be static.  Board of Regents v. Roth, supra,

(procedural due process as extended beyond the actual ownership

of real estate, chattels or money); Bell v. Burson, 402 U.S.

535, 91 S.Ct. 1586, 29 L ed 2d 90,(driver's license); Goldberg

v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L ed 2d 287 (welfare

benefits); Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772,

29 L ed 2d 418, (public employment); and Stanford v. Gas Service

Company, 346 F.Supp. 717, (Kan. 1972) (utility services).  How-

ever, the guide furnished by <u>Roth</u> clearly indicates that it is

only a vested right which cannot be taken away except by due

16 Am Jur 2d, §365, p. 694.
process of law,/ A probationary police officer under Montana law

enjoys no property or vested right.  His status is that of a

temporary employee and until confirmation he has no possible

- 6 -

property interest.

Mr. Justice Holmes wrote in McAuliffe v. Mayor, Etc. of City of New Bedford, 155 Mass. 216, 29 N.E. 517:

> " * * * There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle the city may impose any reasonable condition upon holding offices within its control. * * *"

See 41 U. of Chicago Law Review 297; 26 Stanford Law Review 335.

Federal cases have recognized the distinction between probation and nonprobation employees. Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L ed 2d 15; Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L ed 2d 166. Here the appellant's interest is more one of expectancy of employment than any property interest. Leek v. Theis, 217 Kan. 784, 539 P.2d 304; Wheeler v. School District #20, in County of El Paso, (Colo. 1975), 535 P.2d 206; Tupper v. Fairview Hospital & Training Ctr., M.H.D., (Ore.App. 1975), 540 P.2d 401; Turner v. Board of Trustees, Calexico U. Sch. Dist., 121 Cal.Rptr. 715, 535 P.2d 1171.

Therefore, because the controlling statute gave the Mayor the right to terminate the probationary officer without cause and without a hearing we find no violation of any accused right of such prohibiting policies and no violation of due process.

_____
Justice

We concur:

_____

_____

- 7 -

------------------------------------

Justices

------------------------------------
Hon. W. W. Lessley, District Judge,
sitting in place of Mr. Chief Justice
James T. Harrison.

Mr. Justice Gene B. Daly dissenting:

I dissent.

The appellant-officer appeals from an adverse ruling of the district court and his principal issue on appeal is that the "Metropolitan Police Law" establishes his right to a hearing, as a probationary full-time officer, when charges have been made against him. As a secondary consideration appellant argues that these charges reflect on his good name and reputation, etc., in the community and therefore he is entitled to a hearing as a matter of procedural due process under the Fourteenth Amendment to the Constitution of the United States. He does not declare that the City published the charges but that in seeking employment thereafter he will be subject to publication of the alleged misconduct which has never been explained.

Respondent argues that the mayor gave "reasons" not "charges" upon dismissal. This is not to be argued before this Court as the matter comes to us without a record upon an "Agreed Statement of Evidence". In the agreed statement of evidence in two separate places it is agreed that these are "charges" against the officer.

Somehow the majority has completely avoided any treatment of the principal issue raised by appellant. Then it has through some syllogistic method, not disclosed, arrived at the conclusion that from the facts "emerges but one single issue of constitutional law." From there the majority gets into a jungle of "vested rights" attached to "liberty" or "property" and declares none exist. The authority being the Roth case, supra, which holds that a "property right" is created from state laws not the Constitution and a hearing is essential when "good name, reputation, honor or integrity is at stake because of what the government is doing to him* * *."

Roth does support the principal argument on the statute made by the appellant, who draws his constitutional and property right from the State law.

The language of section 11-1806(1), R.C.M. 1947, is clear and unambiguous; the police commission shall hear, try and decide all charges brought by any person against any member or officer of the police department. The three factors (1) charges, (2) brought by any person, and (3) against an officer, exist in appellant's case. The district court found in its order of May 29, 1975, that plaintiff's petition "Paragraphs I through X are a fair recitation of the facts in this case * * *." Paragraphs I, III and VIII of plaintiff's petition set forth that Officer Schend was a "full-time Police Officer at the time of his removal" and that the mayor alleged "charges" against Officer Schend concerning Officer Schend's "performance of duty, attitude towards his superiors and lack of cooperation with his superiors". In addition, the fact that appellant was a "full-time Police Officer", and that the mayor alleged "charges", is part of the agreed statement of evidence before this Court. Clearly, appellant in his capacity as an officer, was accused of charges by the mayor.

On the basis of this Court's decision in State ex rel. O'Neill v. Mayor of City of Butte, 96 Mont. 403, 30 P.2d 819, wherein the Court held that the mayor has the authority during the probationary period to terminate the officer, without cause or hearing, the district court here reasoned that until once confirmed by the city councel as required by section 11-1803, R.C.M. 1947, the probationary appointee is not a member of the police force. Thus, concluded the district court in the memorandum to its order of May 29, 1975, the mayor had the authority to terminate the employment of Officer Schend as he had no standing or protection under the provisions of section 11-1806, R.C.M. 1947, requiring a hearing. Therein the district court erred.

- 10 -

There is no conflict in the statutes as found by the district court. The mayor can at any time during an officer's probationary period terminate the appointment. However, when the mayor or anyone else selects to file charges against "any officer or member of the police department", the police commission not only has "jurisdiction" but a "duty" imposed by statute to hear, try and decide "all charges".

The judgment of the district court should be reversed; the officer-appellant reinstated to his position on the police force.

_____
                 Justice

- 11 -