No. 03-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 43

JERRY RITCHIE,

        Plaintiff, Appellant and Cross-Respondent,

   v.

TOWN OF ENNIS, a Montana Corporation, separately, and
by and through its Mayor RALPH HERNANDEZ,

        Defendant, Respondent and Cross-Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Madison, Cause No. DV-29-01-60,
                The Honorable Loren Tucker, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

        For Respondent:

        J. Robert Planalp, Landoe, Brown, Planalp, Braaksma & Reida, P.C.,
        Bozeman, Montana

Submitted on Briefs:  September 11, 2003

Decided:  March 2, 2004

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Jerry Ritchie (Ritchie) appeals from an order of the Fifth Judicial District Court, Madison County, granting summary judgment to the Town of Ennis (Town) on his wrongful discharge from employment claim. The Town cross appeals from an order denying its requests for costs and attorney fees. We affirm.

¶2 We address the following issues on appeal and cross appeal:

¶3 1. Did the District Court err in concluding Ritchie was not wrongfully discharged because he was still in the probationary period of employment for police officers?

¶4 2. Did the District Court err in partially denying the bills of costs and attorney fees submitted by the Town and the Mayor?

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶5 In August 2000, the Town hired Ritchie as its town marshall. On January 16, 2001, Ritchie was arrested for stalking a woman with whom he was formerly involved. The next day, Mayor Ralph Hernandez (Mayor) dismissed Ritchie from employment due to the stalking charge and various complaints he had received from citizens of the Town. At the time, Ritchie had not yet completed the six month probationary period required for his position. Subsequently, the charges against Ritchie were dismissed.

¶6 Ritchie brought a wrongful discharge from employment claim against the Town and the Mayor under § 39-2-904, MCA (1999). He asserted that he was terminated for refusing to violate public policy when he was told to stop writing tickets, but he nevertheless wrote various citations rather than giving warnings. He also claimed the Town violated the terms of its own written personnel policies. The Town moved for summary judgment, asserting

2

the Mayor had discretion to discharge Ritchie under § 7-32-4113, MCA, because he had not completed his probationary status. The Town also asserted that even if § 7-32-4113, MCA, did not apply, there were no genuine issues of material fact that Ritchie was discharged for refusing to violate public policy or that his discharge was in violation of the Town's written personnel policies.[1]

¶7 After a hearing on the motion, the court granted summary judgment to the Town concluding that under § 39-2-904(2), MCA (1999), the Town was entitled to dismiss Ritchie as a probationary employee and that §§ 39-2-904(1) and (3), MCA (1999), did not provide Ritchie with grounds for separate claims. Ritchie also represents to this Court that the District Court orally denied the Town's motion under § 7-32-4113, MCA, without giving its reasoning. Ritchie now appeals. The Town cross appeals the District Court's partial denial of the Mayor's and the Town's respective motions for attorney fees and costs. Further facts regarding attorney fees and costs are discussed below.

## II. STANDARD OF REVIEW

¶8 We review a court's order granting summary judgment based on its interpretation of statutory law to determine whether the interpretation was correctly decided. *Hobbs v. City of Thompson Falls*, 2000 MT 336, ¶ 11, 303 Mont. 140, ¶ 11, 15 P.3d 418, ¶ 11. We will affirm a district court's ruling if the court reached the correct result for the wrong reason. *State v. Parker*, 1998 MT 6, ¶ 20, 287 Mont. 151, ¶ 20, 953 P.2d 692, ¶ 20. We review a district court's award of costs for abuse of discretion. *Mularoni v. Bing*, 2001 MT 215, ¶ 53,

---

[1] The Mayor moved for summary judgment on separate grounds which were granted. Ritchie does not appeal the District Court's dismissal of the Mayor.

306 Mont. 405, ¶ 53, 34 P.3d 497, ¶ 53.

## III. DISCUSSION

### ISSUE ONE

¶9    Did the District Court err in concluding Ritchie was not wrongfully discharged because he was still in the probationary period of employment for police officers?

¶10    The District Court's order granting summary judgment to the Town was based entirely on statutory interpretation.  The pertinent provision of the Wrongful Discharge From Employment Act (WDEA), § 39-2-904, MCA (1999), reads:

> **Elements of wrongful discharge.** A discharge is wrongful only if:
>     (1)  it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>     (2)  the discharge was not for good cause and the employee had completed the employer's probationary period of employment; *or*
>     (3)  the employer violated the express provisions of its own written personnel policy.[2] [Emphasis added.]

This provision was first enacted in 1987 and is intended to cover all employees in the State of Montana with exceptions listed in § 39-2-912, MCA.  *MacMillan v. State Compensation*

---

[2]  In 2001, the Legislature inserted a new subsection (2).  The changed portions of the statute now read:

> **Elements of wrongful discharge - - presumptive probationary period.**
> [subsections (1), (2), and (3) renumbered to be subsections (1)(a), (1)(b), and (1)(c).]
> (2) (a)  During a probationary period of employment, the employment may be terminated at the will of either the employer or the employee on notice to the other for any reason or for no reason.
> (b)  If an employer does not establish a specific probationary period or provide that there is no probationary period prior to or at the time of hire, there is a probationary period of 6 months from the date of hire.

Because the amendments to the statute do not apply to Ritchie's case, we decline to interpret the new language here.

4

*Ins. Fund* (1997), 285 Mont. 202, 205, 947 P.2d 75, 76-77; § 39-2-902, MCA.

¶11 By contrast, under Title 7, Local Government, Chapter 32, Law Enforcement, Part 41, Municipal Police Force, there is a specific statute codified at § 7-32-4113, MCA, governing the probationary terms of police officer employment. A version of this statute was first enacted in 1907 and significantly amended in 1921 and 1947. The 1921 amendment provided that a mayor, with the approval of the city council, may discharge a probationary officer. The 1947 amendment removed the requirement for approval of the city council. The current version, which is in relevant respects similar to the 1947 version, reads:

> **Probationary period and confirmation of appointment.** (1) Every applicant who has passed the examination and received the certificate referred to in 7-32-4108 must first serve for a probationary term of not more than 1 year. At any time before the end of such probationary term, the mayor, or the manager in those cities operating under the commission-manager plan, may revoke such appointment.
>     (2) After the end of such probationary period and within 30 days thereafter, the appointment of such applicant must be submitted to the city council or commission, and if such appointment is confirmed by the city council or commission, such applicant becomes a member of the police force and shall hold such position during good behavior unless suspended or discharged as provided by law.

In this case, Ritchie's probationary period was set at six months by the Town. The Mayor terminated Ritchie's employment before the probationary period was completed.

¶12 At the hearing on its summary judgment motion, the Town asserted § 7-32-4113, MCA, as one of its grounds for Ritchie's termination. Contrary to Ritchie's assertion that the District Court dismissed the Town's argument under this statute, the record indicates the District Court reserved this argument at the hearing. Because the court then concluded by a later written order that under § 39-2-904, MCA (1999), the Town was entitled to dismiss

Ritchie, the District Court simply did not reach the argument regarding § 7-32-4113, MCA.

¶13    Instead, the court interpreted the WDEA and stated:

> The legislature has provided three circumstances in which discharge from employment becomes wrongful. Each of the circumstances are provided for separately and independently. The sequence of subsections (a), (b) and (c)[3] are disjunctive as demonstrated by the term "or" between (b) and (c). A fundamental tenant of interpretation is that disjunctive provisions are exclusive. The existence of any one of the circumstances independent from the others is sufficient. Defendants need to demonstrate only one such circumstance in order to avoid the WDA. Defendants have demonstrated and Plaintiff has not controverted the fact that Plaintiff was a probationary employee.

The District Court went on to state that this Court has not specifically addressed the interaction of subsections (1), (2), and (3). Finally, the court noted that because this Court has held probationary police officers have no due process rights, it concluded that the officers also have no rights to a hearing to determine if a termination was for refusing to violate public policy or in violation of an employer's written personnel policy.

¶14    Ritchie asserts the District Court was in error because § 39-2-904, MCA (1999), provides three separate and independent grounds for wrongful discharge. Ritchie argues that because the term "or" is used to distinguish each subsection from the others, that an employee can bring three independent grounds for wrongful discharge if there are prima facie facts that would support each claim. He argues that an employer must defend against each of these three grounds independently.

---

[3] Although the District Court referred to subsections (a), (b), and (c), it was applying the version of § 39-2-904, MCA (1999), that provided for the three types of wrongful discharge as subsections (1), (2), and (3). We assume for purposes here that the court was referring to the correct version of the statute as codified in 1999. Further, the later discussion in this Opinion refers to the subsections as (1), (2), and (3) because that is how the statute was codified when applicable.

¶15     Although the Town asserts the District Court reached the correct result, the Town reasserts its argument that § 7-32-4113, MCA, controls in this situation. Specifically, the Town argues that a mayor has discretion to discharge a police officer during the probationary period that precludes any cause of action under § 39-2-904, MCA (1999), because the Legislature did not repeal § 7-32-4113, MCA, by implication when it enacted § 39-2-904, MCA (1999). As support for its argument, the Town calls this Court's attention to the case law interpreting § 7-32-4113, MCA, and the legislative history of § 7-32-4113, MCA. Alternatively, it argues the District Court properly determined that, at least in regard to police officers, the probationary period under subsection (2) of § 39-2-904, MCA (1999), precludes claims under subsections (1) and (3) if the officer was properly within a probationary period because a probationary officer has no vested property right and therefore no due process rights. Finally, the Town also asserts that because of the recent amendments to § 39-2-904, MCA, by the Legislature, the District Court reached the correct result in holding that probationary employees have no claims under subsections (1) and (3).

¶16     We agree with the Town in that we hold the probationary period of employment specified in § 7-32-4113, MCA, is controlling in this case. Although Ritchie argues in his reply brief that the Town is not entitled to raise this argument because it was required to directly appeal the District Court's dismissal of its summary judgment motion on these grounds, as mentioned, we disagree with Ritchie's characterization of the record. The Town preserved this argument when it presented § 7-32-4113, MCA, to the District Court. The District Court reserved the argument at the hearing and did not reach § 7-32-4113, MCA, in its written order. Therefore, rather than denying the argument, the District Court was silent

as to § 7-32-4113, MCA. As mentioned, we will affirm a trial court if it reached the correct result for the wrong reason. *Parker*, ¶ 20. Even though the court did not reach the Town's claim under § 7-32-4113, MCA, this Court is not precluded from addressing the applicability of § 7-32-4113, MCA, to Ritchie's case.

¶17 Further, although we have repeatedly considered the WDEA as providing for three separate causes of action, *see, e.g., Motarie v. Northern Mont. Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 243, 907 P.2d 154, 156; *Whidden v. John S. Nerison, Inc.*, 1999 MT 110, ¶ 13, 294 Mont. 346, ¶ 13, 981 P.2d 271, ¶ 13; *Miller v. Citizens State Bank* (1992), 252 Mont. 472, 473, 830 P.2d 550, 551; *Buck v. Billings Mont. Chevrolet, Inc.* (1991), 248 Mont. 276, 283-85, 811 P.2d 537, 541-42, we need not reach the issue as addressed by the District Court regarding the interaction of subsections (1), (2), and (3) of § 39-2-904, MCA (1999), because we resolve this case on the basis of § 7-32-4113, MCA.

¶18 We have previously interpreted § 7-32-4113, MCA, to require that a mayor have broad discretion to discharge a probationary officer. In *State ex rel. O'Neill v. Mayor of Butte* (1934), 96 Mont. 403, 408, 30 P.2d 819, 821, we stated: "The mayor, as the officer having charge and supervision of the police department under the Metropolitan Police Law, should have a free hand, unless otherwise controlled by law, in recommending to the city council persons for a permanent position on the police force." Therefore, the issue to be addressed in this case is whether the WDEA provisions of § 39-2-904, MCA (1999), "otherwise control" a mayor's discretion during a police officer's probationary period. We hold the provisions do not.

¶19 In *Ross v. City of Great Falls*, 1998 MT 276, ¶¶ 16-27, 291 Mont. 377, ¶¶ 16-27, 967

8

P.2d 1103, ¶¶ 16-27, we considered an analogous situation in which a police officer applicant asserted that general anti-age discrimination provisions impliedly repealed a statutory age limitation on active police officers. In reaching our conclusion that the later anti-age discrimination statutes did not repeal the earlier statute setting specific age limitations, we cited a number of rules of statutory construction which are applicable here.

¶20     First, the Legislature is presumed to act with knowledge of existing law. *Ross*, ¶ 17. Accordingly, it is further presumed that the Legislature "does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable." *Ross*, ¶ 17 (citation omitted). As a result, a statute may be repealed by implication when a subsequent legislative act is "clearly and irreconcilably inconsistent with the earlier statute." *Ross*, ¶ 16. Due to these presumptions, repeal of a statute by implication is not favored. *Ross*, ¶ 17.

¶21     Further, as was the case in *Ross*, generally applicable statutes do not usually impliedly repeal earlier specific statutes. We stated:

> [A] later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by the irreconcilability of the continued operation of both, or unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal.

*Ross*, ¶ 18 (citation omitted). Finally, in order for a later statute to repeal an earlier statute by implication, the two must "relate to the same subject matter and have the same object in view." *Ross*, ¶ 18.

9

¶22 Applying these rules to the case at hand, we note that the WDEA is a general statute intended to define the remedies for wrongful discharge for all employees in Montana. On the other hand, § 7-32-4113, MCA, does not address remedies for a discharged probationary police officer. Rather, we have specifically held it is for the purpose of ensuring that a mayor have power to determine who to recommend for permanent employment to the police force. Although the two statutes both relate to probationary employment, the two statutes simply do not have "the same object in view" because one is geared toward remedies for employees and one is intended to ensure that a mayor have discretion to choose appropriate police officers for permanent employment. Therefore, the statutes are not manifestly repugnant to each other.

¶23 Further, we have previously noted in dicta that police officers may be placed in a separate category and treated differently because the duties and interests protected by police are of a sufficiently distinct character from those of other employees. *Wadsworth v. State* (1996), 275 Mont. 287, 301, 911 P.2d 1165, 1173 (noting that a police officer's constitutional right to travel may be restricted by residency requirements due to the nature of their duties). The sometimes controversial and unique nature of police duties also serves as justification for the statutory police commissions, §§ 7-32-4151 through -4164, MCA. The police commissions are authorized and set up in part to allow a police officer to appeal a disciplinary or discharge decision by a mayor, thereby providing a means for an appointed officer to actually retain his or her position of employment or avoid unreasonable supervisory decisions.

¶24 This unique character of a police officer's duties also warrants that a mayor have

broad discretion on who to recommend for permanent employment. To hold that written police personnel policies, as in § 39-2-904(3), MCA (1999), and an officer's refusal to issue warnings rather than citations, as an example of § 39-2-904(1), MCA (1999), are paramount to mayoral discretion regarding a probationary police officer would be to substantially remove that discretion and ignore the obligation a mayor has to determine who is fit to police the law of a town after reviewing conduct during a probationary period. *Cf. Horvath v. Mayor of Anaconda* (1941), 112 Mont. 266, 273-75, 116 P.2d 874, 878 (Veterans' Preference Act did not remove mayoral discretion as long as it was not arbitrarily exercised). Therefore, the distinct nature of a police officer's duties also indicates the Legislature did not intend to repeal § 7-32-4113, MCA, by implication and limit mayoral discretion.

¶25 Finally, the two statutes are reconcilable with each other. A police officer may still bring a wrongful discharge from employment suit when the officer has completed the probationary period indicated by § 7-32-4113, MCA. Therefore, once an officer is appointed that employee still benefits from the protections in the WDEA.

¶26 We hold that the Legislature, when it enacted the WDEA, did not remove a mayor's discretion in the area of reviewing an officer's probationary period in order to determine whether to recommend that officer for permanent employment. Therefore, § 39-2-904(1) and (3), MCA (1999), do not apply as a matter of law and do not give a probationary police officer grounds for wrongful discharge from employment. By granting summary judgment to the Town regarding Ritchie's probationary discharge, the District Court reached the correct result.

**ISSUE TWO**

11

¶27    Did the District Court err in partially denying the bills of costs and attorney fees submitted by the Town and the Mayor?

¶28    The Mayor filed a "memorandum of costs and disbursements" on December 13, 2002, after the court filed its judgment in his favor. This memorandum included $5,600 in attorney fees, $113.75 in mediation fees, $7 in clerk fees and $24.91 in copying and postage costs. Ritchie filed an objection to inclusion of the attorney fees on December 30, 2002. His objection did not meet the five day deadline required by § 25-10-502, MCA. When the District Court entered its later order granting summary judgment to the Town, the Town also filed a memorandum of costs and disbursements. This memorandum included $13,167 in attorney fees, $113.75 in mediation fees, $991.05 in deposition costs, and $30.88 in copying and postage costs. Ritchie again objected to the inclusion of attorney fees, however this time he objected within the five day deadline. Ritchie also objected to the mediation and deposition costs.

¶29    The District Court considered both the Mayor's and the Town's memorandums together and held that neither the Town nor the Mayor were entitled to attorney fees. Regarding the Mayor's bill of costs, we will not address or disturb the District Court's ruling because this Court has held "the failure to properly file a cross appeal precludes this Court from addressing the issues raised in the cross appeal." *Joseph Eve & Co. v. Allen* (1997), 284 Mont. 511, 514, 945 P.2d 897, 899. Our review of the record indicates that although the Town properly filed a notice of cross appeal on the bill of costs issue, the Mayor did not. Therefore, the Mayor did not perfect his appeal and we will not address the arguments the Town makes on the Mayor's behalf.

12

¶30     Regarding the Town's bill of costs, the court held it was not entitled to attorney fees because, contrary to the Town's assertion, the reciprocity of attorney fees provided for by § 28-3-704, MCA, did not apply to the arbitration incentive codified by § 39-2-915, MCA. In addition, the court determined that the costs of the depositions should not be awarded because although the depositions were filed with the court as requested by both parties, the depositions were not necessary to the court's order granting summary judgment as the order was based on a statutory interpretation. Further, the court denied the request for mediation costs reasoning that such an award would act as a disincentive to mediation. Finally, the court awarded $30.88 in allowable costs.

¶31     On cross appeal, the Town does not dispute the holding regarding mediation fees. The Town asserts the court erred in concluding it was not entitled to attorney fees under the reciprocity statute, § 28-3-704, MCA, as applied to § 39-2-915, MCA. The Town also argues it is entitled to deposition costs because the depositions were filed with the court and were mentioned in the final order granting summary judgment.

¶32     Ritchie argues the District Court's conclusions concerning costs were proper on each issue. He notes that this Court reviews an award of costs for abuse of discretion. He asserts that the Town is not entitled to attorney fees under its reciprocity argument because it does not qualify under the statutory elements of § 39-2-915, MCA. Finally, he argues the District Court properly concluded the depositions were not necessary to determine the summary judgment motion and were therefore not recoverable as costs.

¶33     We agree with the District Court. We review a district court's award of costs for abuse of discretion. *Mularoni*, ¶ 53. We review a district court's statutory interpretation as

13

a matter of law. *Clover Leaf Dairy v. State* (1997), 285 Mont. 380, 389, 948 P.2d 1164, 1169. Attorney fees are not normally allowable as costs. *State ex rel. Sowerwine v. District Court* (1965), 145 Mont. 375, 379, 401 P.2d 568, 570.

¶34 Concerning the Town's reciprocity argument, § 28-3-704, MCA, provides that whenever by virtue of an obligation in the nature of a contract, one party has an expressed right to recover attorney fees from any other party, all parties shall be deemed to have the same right. In contrast, under the specific provisions of the WDEA, §§ 39-2-914 and -915, MCA, provide that a party who makes a written offer to arbitrate that is not accepted by the other party and who also eventually prevails in an action is entitled as an element of costs to reasonable attorney fees incurred subsequent to the offer. The Town asserts that the WDEA's written offer to arbitrate qualifies under § 28-3-704, MCA, as an obligation in the nature of a contract that provides the Town the same rights as Ritchie. As such, the Town asserts it is entitled to attorney fees because Ritchie made a written offer to arbitrate.

¶35 We agree with the District Court that such an argument fails to acknowledge the plain language requirements of § 39-2-915, MCA. Under that section, a party is not entitled to attorney fees unless that party both makes a written offer which is refused and prevails in the action. In this case, neither the Town nor the Mayor made a written offer to arbitrate. To hold that § 39-2-915, MCA, provides for a reciprocal right in the Town would completely defeat the first element of the statute that rewards the making of an offer to arbitrate. Such a holding would also defeat the purpose of the statute to encourage arbitration in that a party who refused to arbitrate could claim attorney fees. Finally, § 28-3-704, MCA, codifies a statutory policy to make the rights to attorney fees reciprocal in existing contracts. If an

14

offer to arbitrate is never accepted and no arbitration occurs, no contract was ever formed upon which § 28-3-704, MCA, can base its requirement of reciprocal rights to attorney fees. Therefore, the District Court properly determined that the Town was not entitled to attorney fees by virtue of § 28-3-704, MCA.

¶36    Finally, we have held deposition costs are recoverable when the depositions are used in a dispositive manner in a summary judgment motion. *Roy v. Neibauer* (1981), 191 Mont. 224, 227-28, 623 P.2d 555, 557. Here, as the District Court concluded, the depositions were not necessary to decide the Town's summary judgment motion because the grant of summary judgment is based purely on statutory interpretation and undisputed facts not derived from the depositions. Therefore, the District Court did not abuse its discretion in denying deposition costs to the Town.

## IV. CONCLUSION

¶37  The District Court reached the correct result in granting summary judgment to the Town and in denying certain attorney fees and costs requested by the Town.  We affirm.  Each party shall pay their own costs on appeal.

/S/ JOHN WARNER

We Concur:

/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶38    I dissent.  Section 39-2-904(1)(a), MCA, provides that a discharge is wrongful if it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy.  Ritchie filed a wrongful discharge from employment claim against the Town and Mayor asserting that he was terminated for refusing to violate public policy when he continued to issue traffic citations despite being told to stop writing tickets and give warnings.  Relying on § 39-2-904(1)(b), MCA, the District Court held that, since Ritchie had not completed his probationary period of employment, he was not entitled to a hearing to determine whether his termination was for violation of public policy.  Although the District Court did not address the applicability of § 7-32-4113, MCA, this Court affirms on the basis that the probationary period of employment for police officers specified in § 7-32-4113, MCA, controls.  I disagree with both rationales.

¶39    Section 39-2-904(1)(a), MCA, clearly provides that a discharge is wrongful if it was in retaliation for the employee's refusal to violate public policy or for  reporting a violation of public policy.  As the Court recognizes (and then ignores), this provision is independent of the requirements in § 39-2-904(1)(b), MCA, or § 7-32-4113, MCA, that the employee have completed his probationary period.  Clearly, the legislature was interested in requiring that employers treat their employees consistently with public policy regardless of whether the employees were probationary or permanent employees.  At the risk of sounding circuitous, the Court's holding is itself contrary to public policy in that it encourages employers to terminate probationary employees for refusing to violate public policy. The legislatively expressed concern with upholding "public policy" trumps the employer's safe

17

harbor with regard to probationary employees.  Under the Court's holding of today, an unscrupulous employer has a license to violate public policy so long as it only asks probationary employees to do its bidding.  This precedent would seem to make a mockery of any concern with public policy.  I would reverse the grant of summary judgment.


/S/ W. WILLIAM LEAPHART

Justice Jim Rice specially concurring.

¶40    I agree with Justice Leaphart that the District Court's analysis of the Wrongful Discharge from Employment Act was erroneous. In analyzing the three subsections of § 39-2-904, MCA, defining wrongful discharge, the District Court noted that the subsections were disjunctive, and concluded therefrom that:

> A fundamental tenet of interpretation is that disjunctive provisions are exclusive. The existence of any one of the circumstances independent from the others is sufficient. *Defendants need to demonstrate only one such circumstance in order to avoid the WDA.* Defendants have demonstrated and Plaintiff has not controverted the fact that Plaintiff was a probationary employee. [Emphasis added.]

Although the District Court correctly noted that the subsections of the statute are disjunctive, it erroneously concluded therefrom that if a defendant-employer established that one of the subsections did not apply, then the discharge could not be found to be wrongful under either of the remaining two subsections. This is an incorrect rendering of the plain meaning of the statute, and inconsistent with our previous application thereof. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 243, 907 P.2d 154, 156.

¶41    Nonetheless, I agree with the Court that the discharge here is governed by the more specific provisions of § 7-32-4113, MCA, as argued by the defendants in the District Court, and, therefore, concur in the Court's holding herein.


                                    /S/ JIM RICE


                                    19