No. 00-766

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 215

HUMBERT MULARONI, SR., MARY JO

MULARONI, HUMBERT MULARONI, JR.,

EDWARD MULARONI, DEAN MULARONI,

MARC MULARONI, and PETER MULARONI,

Plaintiffs/Appellants,

v.

DOUGLAS K. BING and JODEAN M. BING,

Defendants/Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Christopher K. Williams, Bozeman, Montana

For Respondents:

Allan H. Baris, Moore, O'Connell & Refling, Bozeman, Montana

Submitted on Briefs: April 19, 2001
Decided: October 29, 2001

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Plaintiffs, Humbert Mularoni, Jr., Edward Mularoni, Dean Mularoni, Marc Mularoni, and Peter Mularoni (Mularonis), filed a complaint in the Eighteenth Judicial District Court in Gallatin County, seeking a declaratory judgment limiting the scope of Douglas and Jodean Bing's (Bings) easement across Mularonis' property. Bings counterclaimed for a declaration that the easement was a general access easement. The District Court entered judgment in favor of Bings, finding the easement was a general access easement and Bings were entitled to construct a road across it. The District Court awarded some costs to Bings, including the court cost associated with Bings' motion to compel, but concluded Mularonis were not responsible for the costs of the Humbert Mularoni Sr. deposition. Mularonis appeal the District Court's conclusions of law and judgment, while Bings cross-appeal the court's denial of the Mularoni deposition costs, and the District Court's failure to award attorney's fees and expenses associated with the motion to compel.

¶2 We restate the issues as follows:

1. Whether the District Court erred in construing the scope of the easement as a general access easement; and

2. Whether the District Court erred in determining which of the claimed costs and fees should be awarded to the prevailing party.

We affirm in part, and reverse and remand in part.

## FACTUAL BACKGROUND

¶3 Neither party disputes the District Court's findings of fact. The tracts of land at issue in this matter are located in Gallatin County, approximately five miles north of Big Sky. The tracts are adjacent to one another, and are identified as Tract 1 (divided into Tracts 1-A and 1-B) and Tract A-1, with Tract A-1 situated directly south of Tract 1. Bings, the Defendants, currently own Tracts 1-A and 1-B (Tract 1), while Mularonis, the Plaintiffs, own Tract A-1. The easement at issue in this matter is located on Tract A-1, and is adjacent to Tract 1-B. A history of the lands' acquisition and subdivision is important to the resolution of the issues before us.

¶4 In 1986, Alvard and Venice Linford (Linfords) owned both Tracts 1 and A-1. In the fall of that year, Bings expressed an interest in purchasing a piece of Linfords' Tract 1 along with the buildings (house and guest house) located on the property. Because a portion of the guest house was located on Tract A-1, boundary realignment was necessary to ensure the building rested completely within the boundaries of Tract 1. In addition, Linfords agreed to divide Tract 1, (approximately a ten acre area) into two pieces, so Bings could purchase the southern three acres, which included the buildings. Bings reserved an option to buy the remaining acres of Tract 1 (i.e., Tract 1-A), and Linfords granted Bings right of first refusal on Tract A-1.

¶5 In October of 1986, Linfords retained Ray Center (Center), a registered land surveyor, to prepare certificates of survey (COSs) in preparation for the sale to Bings. Center simultaneously prepared two COSs (1348 and 1348A), which were signed by Center and Linfords on October 28, 1986, and recorded January 28, 1987. Center realigned the boundary between adjacent Tracts 1 and A-1, as evidenced by COS 1348. Center also subdivided Tract 1 into Tracts 1-A (northern portion) and 1-B (southern portion), as evidenced by COS 1348A. Center created the necessary easements for the subdivision, and noted them on each respective COS. We now describe the formation and creation of each COS.

¶6 As illustrated by COS 1348, (the boundary realignment between Tracts 1 and A-1), Center designated three easements affecting the tracts. First, Center drew in freehand an "EXISTING DRIVEWAY," that ran northward across Tract A-1 to the southern boundary of Tract 1. Second, near the middle of Tract A-1, Center designated a 90' x 140' rectangular easement and labeled it "EASEMENT FOR TRACT 1 ALTERNATIVE DRAINFIELD." Center testified that his intention in designating this easement was to create a replacement drainfield if the seepage pit, which was located closer to the guest house, failed.

¶7 The third easement Center designated was trapezoid-shaped and adjoined the northern boundary of the drainfield easement and the southern boundary of Tract 1. Center labeled this easement: "EASEMENT FOR ACCESS WEST OF GUEST HOUSE/GARAGE AND TO SEEPAGE PIT AND ALTERNATIVE DRAINFIELD FOR TRACT 1." The "EXISTING DRIVEWAY" easement connected to Tract 1 at the western triangular portion of the trapezoid easement. In addition to the maps of the tracts and easements, Center included the following granting clause on page two of COS 1348, under the heading "EASEMENT FOR ACCESS AND DRAINFIELD PURPOSES:"

> The owners of Tract 1, Certificate of Survey No. 1348, Gallatin County, Montana, their heirs, and assigns, are hereby granted an easement for access and drainfield construction, maintenance, and replacement, as shown on the accompanying Certificate of Survey, over and across Tract A-1, Certificate of Survey No. 1348, Gallatin County, Montana.

This clause was signed by Linfords and Center on October 28, 1986. Center testified that in designating the trapezoid easement, he intended to create only access to the drainfield on Tract A-1, not to create a general access easement across Tract A-1 to Tracts 1-B or 1-A. It is this trapezoid easement which gave rise to this litigation.

¶8 Simultaneous to realigning Tracts 1 and A-1, Center subdivided Tract 1 into 1-A (northern half) and 1-B (southern half), which allowed Bings to purchase the three-acre portion of Tract 1 and the buildings (i.e., Tract 1-B). For this subdivision, Center prepared COS 1348A, and also provided the appropriate easements for the new tracts. On COS 1348A, Center designated a 30-foot road easement which appeared to connect with the "EXISTING DRIVEWAY" and the trapezoid easement, as noted on COS 1348. This 30-foot road easement extended east along the southern boundary of Tract 1-B, and then ran north across Tract 1-B to Tract 1-A. Center labeled this easement, "30' ROAD EASEMENT FOR FUTURE ROAD ACCESS TO TRACT 1-A." Center included the previously created easements from COS 1348 on this second COS. On COS 1348A, he labeled the rectangular easement as "EASEMENT FOR ALTERNATIVE DRAINFIELD FOR TRACT 1-B." His label for the trapezoid easement differed from COS 1348, and simply read, "ACCESS EASEMENT." Thus, after Tract 1 was subdivided, Tract A-1, to the south, was burdened by three easements: (a) the existing road/driveway; (b) the rectangular alternative drainfield site; and (c) the trapezoid shaped easement. [SEE APPENDIX A for drawing of the tracts.]

¶9 On October 29, 1986, Linfords conveyed Tract 1-B to Bings by warranty deed, which described the land conveyed as "Tract 1-B of Certificate of Survey 1348A." In reviewing the deed at closing, Douglas Bing studied COS 1348A, and felt comfortable that the trapezoid easement was a general access easement as he had negotiated with Linfords. When Bings purchased Tract 1-B, they had an option to purchase Tract 1-A to the north, and also a right of first refusal on Tract A-1 to the south.

¶10 In 1987, Linfords found a buyer for Tract A-1. Concerned about having a stranger for a neighbor, Bings contacted a family friend, John Malpeli, about purchasing Tract A-1 if Bings exercised their right of first refusal. Malpeli agreed, and on September 1, 1987, Linfords conveyed Tract A-1 to Bings by warranty deed, which described the property as "Tract A-1 of Certificate of Survey 1348." Bings then transferred Tract A-1 to Malpeli on September 2, 1987.

¶11 Two years later, Linfords conveyed Tract 1-A to Bings on October 10, 1989. The warranty deed described the property as "Tract 1-A of Certificate of Survey 1348A."

¶12 On December 31, 1990, Malpeli conveyed Tract A-1 to the Mularonis, the Plaintiffs and Appellants here. In this warranty deed, the land description refers to "Tract A-1 of Certificate of Survey 1348."

¶13 The deeds associated with conveying these tracts involved various references to COS 1348 and COS 1348A; however, none of the deeds specifically referred to the trapezoid easement on Tract A-1. All the deeds referred to the "existing driveway" easement that runs from the southern portion of A-1, north to the southern boundary of Tract 1-B, using language that noted this roadway easement was to be jointly used by the owners of Tracts 1-A and 1-B of COS 1348A and the owners of Tract A-1 of COS 1348. In addition, all three deeds conveying Tract A-1 (Linfords to Bings; Bings to Malpeli; and Malpeli to Mularoni) contained a covenant prohibiting construction of a residence on the hill in the northwest portion of Tract A-1.

¶14 In the spring of 1998, Bings informed Mularonis they intended to utilize the "access easement," as depicted on COS 1348A. Bings wanted access to an area on the northern part of their property, and felt the steep grade of the area where the existing driveway meets the 30' road easement on Tract 1-B prevented location of an access road at that position. Bings instead planned to build an access road connecting the existing driveway to the southern boundary of Tract 1-B by building across the trapezoid easement. The

Mularonis objected and informed Bings they did not have authorization to do any work on Tract A-1.

¶15 In May, 1998, Bings constructed an access road across the trapezoid-shaped easement that ran from the existing driveway easement in a northeast direction, connecting to the southern boundary of Tract 1-B. In September, 1998, Mularonis filed a complaint, requesting a declaratory judgment that the trapezoid easement was not for general access, and that construction of the road constituted a trespass. After Bings filed their counterclaim, seeking a declaration that the easement was a general access easement, both parties began the discovery process.

¶16 The original plaintiffs in this action were the five Mularoni children. Humbert Mularoni Sr., (Humbert Sr.) and his wife, Mary Jo, were later added as parties upon the request of Bings. Although Humbert Sr. was not an owner of the property, he had interacted with Bings in the preceding years and was involved in providing written answers to discovery. Bings deposed Humbert Sr. in July of 1999, but he was unable to provide all the information sought by Bings. Bings also wished to depose the Mularoni children, all of whom lived outside of Montana. On August 9, 1999, Bings sent notices of deposition to the Mularoni children (Humbert Jr., Edward, Dean, Marc, and Peter), noticing depositions for August 18, 1999. Mularonis responded that they would not be able to attend, due to the short notice, and asked that Bings either travel to them or take the depositions by phone.

¶17 On August 25, 1999, Bings filed a motion to compel attendance at depositions and requested sanctions (attorney's fees and costs related to bringing the motion). Mularonis filed a response and motion for protective order, requesting the court deny the motion to compel. Mularonis asserted the Mularoni children were not involved in the management or purchase of the property at issue and requested the court order telephonic depositions if necessary. On September 22, 1999, the District Court granted Bings' motion to compel and ordered the two most knowledgeable adult children to appear for depositions in Montana. Bings thereafter deposed Edward and Dean Mularoni in October of 1999.

¶18 The District Court held a bench trial on April, 12, 2000. All the relevant deeds and COSs, as described above, were admitted into evidence for the court to consider. In addition, testimony and survey maps showed that, because of steep terrain, the westerly portion of the 30' easement was impractical to use, and/or support an access road.

¶19 On August 23, 2000, the District Court entered its findings of fact and conclusions of law. In its conclusions of law, the court concluded the trapezoid easement was for general access, and that the access road constructed by Bings was within the scope of the easement and therefore did not constitute a trespass. The court concluded Bings, as prevailing parties, were entitled to costs in this matter.

¶20 Bings filed a memorandum of costs with the court and included a $10 cost for the successful motion to compel and $254.20 in costs for Humbert Sr.'s deposition. Mularonis objected to the charges for the motion to compel and the deposition, since Humbert Sr.'s deposition was not used at trial. On September 18, 2000, the District Court held that Mularonis were not responsible for the deposition cost, but were responsible for the $10 cost.

¶21 Mularonis appeal the District Court's conclusions that the language describing the trapezoid easement is clear and unambiguous, that the scope of the easement allows a general access road, and that Bings were entitled to costs of suit. In their cross-appeal, Bings challenge the District Court's denial of Humbert Sr.'s deposition costs and the attorney's fees and expenses associated with the successful motion to compel.

## STANDARD OF REVIEW

¶22 We review findings of a trial court sitting without a jury to determine if the district court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P.; *Espy v. Quinlan*, 2000 MT 193, ¶ 14, 300 Mont. 441, ¶ 14, 4 P.3d 1212, ¶ 14 (citing *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906). A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that the district court made a mistake. *Espy*, ¶ 14. We review a district court's conclusions of law *de novo* to determine whether they are correct. *McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 18, 301 Mont. 81, ¶ 18, 10 P.3d 794, ¶ 18 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603). In reviewing a district court's award of costs, the standard of review is whether the district court abused its discretion. *Gilluly v. Miller* (1995), 270 Mont. 272, 274, 891 P.2d 1147, 1148. Finally, we review imposition of sanctions for a lack of compliance with discovery procedures for abuse of discretion. *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 86, 293 Mont. 97, ¶ 86, 973 P.2d 818, ¶ 86 (citing *McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1172.

# DISCUSSION

## Issue I

¶23 **Did the District Court err in construing the scope of the trapezoid easement as a general access easement?**

¶24 In analyzing the scope of the trapezoid easement, we must determine what source defined it: "[t]he extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." Section 70-17-106, MCA; *Leffingwell Ranch, Inc. v. Cieri* (1996), 276 Mont. 421, 430, 916 P.2d 751, 756. Therefore, we must address the terms of the grant, including any COS that defines the easement in question. We first determine what, if any, COS is incorporated into the deeds. Second, we determine which of such COSs applies, and finally, we address the ultimate issue of the scope of the trapezoid easement.

¶25 The District Court concluded in its conclusions of law that the incorporation of COS 1348A into the warranty deed between Linfords and Bings effectively created both the drainfield and trapezoid easements. Neither party disputes this conclusion.

¶26 However, relying on the doctrine of merger, Mularonis contend the District Court erred by considering COS 1348A and the warranty deed in ultimately construing the easement's scope. Essentially, Mularonis argue that, when Bings took title to Tract A-1 from Linfords, before conveying A-1 to Malpeli one day later (See ¶ 10 herein), a merger of titles occurred, and therefore, the easements were extinguished. *See* § 70-17-111, MCA. The District Court impliedly rejected this argument, as evidenced by its holding that the trapezoid easement burdening Tract A-1, benefitted both Tracts 1-B and 1-A. This benefit to the two parcels is determinative of the merger argument.

¶27 According to Restatement (Third) of Property: Servitudes § 5.7 (2000), "When property benefited or burdened by a servitude is divided into separately owned parcels, the rights and obligations that run with each of the separately owned parcels are as follows . . . (1) Each separately owned parcel is entitled to make the uses privileged by an easement or profit; . . . . " "If [a] dominant tenement is transferred in separate parcels to different persons, 'each grantee acquires a right to use easements appurtenant to the dominant estate, provided the easements can be enjoyed as to the separate parcels without any additional burden on the servient tenement.' " 7 Thompson on Real Property, Thomas

Edition, § 60.07(b)(3) (David A. Thomas et al. eds., 1994).

¶28 After the initial conveyance, Tract A-1 was burdened by three easements: the existing driveway; the alternative drainfield easement; and the trapezoid easement. The deeds conveying Tract A-1 all referred to COS 1348, where the trapezoid easement was depicted as benefiting Tract 1. Certificate of Survey 1348 also included a granting clause to the owners of Tract 1 for "an easement for access and drainfield construction, maintenance, and replacement," across Tract A-1. Following the subdivision of Tract 1, Linfords conveyed Tract 1-B to Bings, and continued to possess Tract 1-A. When Linfords conveyed Tract A-1 to Bings, they still possessed Tract 1-A, and thus continued to benefit from the access easement. When Tract 1-B and later Tract 1-A were conveyed to Bings, they acquired the same right to use easements appurtenant to the dominant estate as Linfords previously enjoyed.

¶29 It is true, as Mularonis argue, that a servitude may be terminated when all the benefits and burdens come into a single ownership. Restatement (Third) of Property: Servitudes § 7.5 (2000). When the burdens and benefits are united in a single person, or group of persons, the servitude ceases to serve any function, and because no one else has an interest in enforcing the servitude, the servitude terminates. Restatement (Third) of Property: Servitudes § 7.5 cmt. a (2000). However, in order to extinguish an easement by merger, there must be unity of title or ownership, coextensive in validity, quality, and all other circumstances of right. 28A C.J.S. *Easements*, § 123 (1996).

> [A]n easement is not extinguished under the doctrine of merger by the acquisition by the owner of the dominant or servient estate of title to only a fractional part of the other estate [See *Crease v. Jarrell*, 224 P. 762 (Cal.App. 1924)]. For the unity of title to extinguish an easement, it is the ownership of the two estates that must be coextensive, and not the land area comprising the dominant and servient estates [citation omitted]; the common ownership need not extend to the whole of the original dominant estate [citation omitted]; and thus, the common ownership of the servient estate and several of the dominant estates extinguishes the easement as to those lots. [See *Cheever v. Graves*, 592 N.E.2d 758 (Mass.App.Ct. 1992)].

28A C.J.S. *Easements*, § 123 (1996).

¶30 When Bings owned Tracts 1-B and A-1, a common ownership occurred, which arguably extinguished any easements <u>as between those two tracts</u>. However, because the

trapezoid easement on Tract A-1 benefitted <u>both</u> sub-tracts within Tract 1, Linfords retained a benefit from the easement at the time Bings owned both Tracts 1-B and A-1. Thus, when Linfords conveyed Tract 1-A to Bings, that same benefit was conferred on Bings. We therefore conclude the District Court's ruling that both Tracts 1-A and 1-B benefited by the trapezoid easement is supported by substantial evidence, and therefore will not disturb its conclusion in that regard.

¶31 As an alternative to the merger argument, Mularonis contend the District Court erred when it concluded that the language describing the trapezoid easement was not ambiguous, and that Center's testimony regarding the parties' intent does not control. The District Court held that Center's testimony did not overcome the clear meaning of the writings on both COSs. We agree with the District Court that the language used to describe the trapezoid easement was clear and unambiguous, and created a general access easement.

¶32 A transfer of property is to be interpreted in like manner with contracts in general. Section 70-1-513, MCA. In interpreting the meaning of an easement grant, contract principles apply. *Van Hook v. Jennings,* 1999 MT 198, ¶¶ 11-12, 295 Mont. 409, ¶¶ 11-12, 983 P.2d 995, ¶¶ 11-12. Construction and interpretation of written agreements is a question of law for the court to decide. *Johnson v. Nyhart* (1995), 269 Mont. 379, 387, 889 P.2d 1170, 1174 (citations omitted). Whether ambiguity exits in a contract is also a question of law. *In re Marriage of Holloway*, 2000 MT 104, ¶ 5, 299 Mont. 291, ¶ 5, 999 P.2d 980, ¶ 5. Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Section 28-2-905, MCA. Finally, the breadth and scope of an easement are determined upon the actual terms of the grant. Section 70-17-106, MCA; *See Van Hook*, ¶ 12.

¶33 The incorporation of COS 1348A into the deeds conveying Tracts 1-B and 1-A to Bings effectively and clearly described the easements in question. Certificate of Survey 1348A clearly marks the drainfield and trapezoid easements. The trapezoid easement is labeled as "ACCESS EASEMENT," with no other limits or qualifications. In addition, COS 1348, which was referenced by each deed conveying Tract A-1, explicitly granted to the owners of Tract 1, "an easement for access and drainfield construction, maintenance, and replacement . . . ." We conclude there is substantial evidence to support the District Court's findings, and that the trial court did not misapprehend the effect of such evidence. Therefore, we hold that the District Court was correct in its conclusions of law and Bings are entitled to a general access across the trapezoid easement.

# Issue 2

¶34 **Whether the District Court erred in determining which costs and fees should be awarded to the prevailing party.**

¶35 Two distinct questions regarding fees and costs are presented: first, whether the District Court erred in failing to award attorney's fees associated with Bings' successful motion to compel, pursuant to Rule 37(d) M.R.Civ.P.; and second, whether Bings were entitled to certain deposition costs pursuant to either § 25-10-201, MCA, or Rule 37(d) M.R.Civ.P. In analyzing these issues, we rely on the following facts from the record.

¶36 On August 9, 1999, Bings served all five Mularoni children with a notice of deposition, to take place August 18, 1999, in Bozeman, Montana. Through counsel, the children informed Bings the time noticed was impractical due to the travel distance required, and offered to set up telephonic depositions. Bings agreed to take three depositions by phone if at least two of the five would appear in person. Mularonis did not accept this compromise, and none of the children appeared for depositions on August 18, 1999.

¶37 Bings filed a motion to compel attendance at depositions and for sanctions with supporting memorandum. Based on the Mularoni children's failure to attend their depositions, Bings requested the court grant relief pursuant to Rule 37(d), M.R.Civ.P., specifically including a prayer for attorney's fees in their request. Bings argued that the children were the original plaintiffs in the matter, and that Bings had attempted to coordinate the depositions with the Mularonis' trips to Montana. In the motion to compel, Bings did not mention Humbert Sr.'s deposition, other than to note it had already occurred.

¶38 Mularonis filed a response and motion for protective order, claiming the notice to the Mularoni children was insufficient and that the depositions should be taken by phone instead of in person.

¶39 The District Court entered an order granting Bings' motion to compel, in part. The court ordered the two most knowledgeable adult children to appear in Montana for depositions. In its order, the court noted that the original plaintiffs in this matter were the Mularoni children, Bings offered to schedule depositions at times when the children would be in Montana, and Bings also agreed to depose three of the five children by telephone, as long as two were taken in person. In its ruling on the motion, the District Court made no

findings regarding costs, other than to charge Mularonis with "the expenses of the depositions taken in Montana."

¶40 On September 24, 1999, two days after the court entered its order, Bings filed a reply brief on the motion. In the reply, Bings asserted that in his deposition, Humbert Sr. failed to provide meaningful information regarding the properties in question, and therefore Bings needed to depose the Mularoni children. Bings attached a copy of Humbert Sr.'s deposition as an exhibit, and referenced it throughout the reply brief. The record indicates this information was not before the District Court when it ruled on the motion to compel two days earlier.

¶41 Following the trial, the District Court granted Bings, as the prevailing party, "costs in this matter." Bings filed a memorandum of costs which included $254.20 to cover the "expense of taking deposition of Humbert Mularoni . . . (used in Motion to Compel)." Other than a $10 cost, pursuant to § 25-10-202, MCA, Bings did not list any other expenses or attorney's fees associated with its motion to compel.

¶42 Mularonis objected to the $254.20 deposition charge, relying on § 25-10-201, MCA, noting that no portion of the deposition was used at trial or cited in the motion to compel. In response to the objection, Bings conceded the deposition was not cited in the motion to compel, but asserted the entire deposition was submitted as an exhibit with the reply brief, and argued that the deposition costs were recoverable because the deposition was filed with and used by the court.

¶43 In its order and findings regarding costs, the District Court denied Bings the costs of Humbert Mularoni Sr.'s deposition, relying on our decision in *Fisher v. State Farm Ins. Companies* (1997), 281 Mont. 236, 934 P.2d 163.

¶44 On cross-appeal, Bings challenge the District Court's conclusions under *Fisher*, arguing the deposition was not used for the mere convenience of counsel. Alternatively, Bings contend the deposition costs are recoverable as part of the costs associated with the motion to compel. In addition, Bings maintain the District Court ignored their request for attorney's fees contained in their motion to compel. We first address the question of attorney's fees associated with a motion to compel.

¶45 Our standard of review of sanctions imposed for a lack of compliance with discovery procedures is whether the district court abused its discretion. *Delaware*, ¶ 86. We have

consistently held that a party's abuse of discovery rules is better punished than encouraged. *Delaware*, ¶ 87 (citations omitted). This judicial intolerance of discovery abuses is supported by our concern with overcrowded dockets and the need to maintain fair and efficient judicial administration of pending cases. *Delaware*, ¶ 87.

¶46 In its motion to compel, Bings sought relief under Rule 37(d) of the Montana Rules of Civil Procedure, which reads in relevant part:

> If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, *the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure*, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
>
> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c). [Emphasis added.]

¶47 We have not previously interpreted the above-emphasized language of Rule 37(d), as it relates specifically to an award of attorney's fees. However, in *Delaware*, we applied 37(b)(2), M.R.Civ.P., which includes mandatory language regarding attorney's fees that is identical to that contained in Rule 37(d), M.R.Civ.P. We noted the language of the rule was "strict;" and that:

> a district court *must* sanction those who disobey a discovery order by ordering them to pay the other party's reasonable expenses, *including attorney fees*, which arise because of the failure to comply with a discovery order, unless the court finds that the failure to comply with the order was substantially justified, or that other circumstances make an award of expenses unjust. The party attempting to avoid Rule 37(b)(2), M.R.Civ.P., sanctions has the burden of proving that its failure to comply with the order was "substantially justified," or that other circumstances make such an award unjust. See *Hyde & Drath v. Baker* (9th Cir. 1994), 24 F.3d

1162, 1171 (citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, (9th Cir. 1983), 702 F.2d 770, 784) (interpreting the identical federal rule).

*Delaware,* ¶ 89 *(emphasis added).*

¶48 The same rationale applies with equal force to the identical language of Rule 37(d). Upon motion, the district court is mandated to assess reasonable expenses, including attorney's fees, against the party failing to appear for a duly noticed deposition, unless the court finds substantial justification or circumstances that make an award of such expenses unjust.

¶49 In its ruling on the motion to compel, the District Court failed to award attorney's fees to Bings and made no findings to justify why it would be unjust to award them. Absent such justification, we conclude the District Court erred by not awarding Bings attorney's fees associated with their motion to compel. Therefore, we remand this matter to the District Court to assess the appropriate attorney's fees associated with Bings' successful motion to compel, unless the court on remand finds and recites substantial justification making such an award unjust.

¶50 We now address the Humbert Sr. deposition expense, and whether Bings are entitled to recovery pursuant to either Rule 37(d) M.R.Civ.P., or § 25-10-201, MCA.

¶51 First, Bings argue the costs associated with deposing Humbert Sr., are expenses associated with the motion to compel, and pursuant to Rule 37(d), M.R.Civ.P., they are entitled to those costs. However, our reading of the record indicates that when the District Court ruled on Bings' motion to compel, it was not aware of the ineffectiveness of Humbert Sr.'s deposition. More to the point, Bings did not cite the deposition as a basis for their motion. We therefore find the District Court did not abuse its discretion by not awarding the costs of this deposition to Bings pursuant to Rule 37(d).

¶52 Bings also appeal the trial court's ruling that the Humbert Sr. deposition costs are not recoverable costs under § 25-10-201, MCA. Bings requested the award of deposition costs pursuant to § 25-10-201, MCA. Bings analogized the summary judgment motion in *Fisher* to the motion to compel in this matter, and argued that since the deposition was filed with the court, it is a recoverable cost.

¶53 In reviewing a district court's award of costs, the standard of review is whether the

court abused its discretion. *Gilluly*, 270 Mont. at 274, 891 P.2d at 1148. Section 25-10-201, MCA, identifies the costs that may be awarded in an action. That statute provides in relevant part: "A party to whom costs are awarded in an action is entitled to include in his bill of costs his necessary disbursements, as follows: . . . (2) the expenses of taking depositions; . . . ." Section 25-10-201, MCA. "We have consistently interpreted § 25-10-201(2), MCA, to allow costs for depositions in only limited circumstances where the depositions were relied upon by the district court, or were used in a trial setting." *Fisher*, 281 Mont. at 239, 934 P.2d at 164. We have held that deposition costs are allowed: when a deposition is used at trial as evidence or for impeachment (*Gilluly*, 270 Mont. 272, 891 P.2d 1147); and when a deposition is filed with the district court, and used by the court in a dispositive summary judgment motion (*Roy v. Neibauer* (1981), 191 Mont. 224, 227-28, 623 P.2d 555, 557). Deposition costs are not allowed when the purpose of the deposition is merely to assist the requesting party in compiling its case, and is taken only for the convenience of counsel. *McGinley v. Ole's Country Stores, Inc.* (1990), 241 Mont. 248, 250, 786 P.2d 1156, 1157. Depositions which are not used at trial are for the "convenience of counsel" and are not recoverable costs. *Gilluly*, 270 Mont. at 276, 891 P.2d at 1149.

¶54 In *Fisher*, we declined to award costs of depositions where an insured plaintiff accepted and received an offer of judgment from the defendant, and then requested costs associated with his claim. We held the insured was not entitled to recover deposition costs because the depositions were not "filed with the District Court," were not used as evidence for the purpose of impeachment, and were not used by the district court in "deciding a dispositive summary judgment motion." *Fisher*, 281 Mont. at 239, 934 P.2d at 165.

¶55 Here, Humbert Sr.'s deposition was not used at trial, either as evidence or for impeachment purposes. Nor was the deposition relied on by the District Court in its ruling on the motion to compel. Moreover, the motion to compel was not a dispositive motion. We therefore conclude the District Court correctly declined to award the costs associated with the Humbert Sr. deposition pursuant to § 25-10-201, MCA.

¶56 In conclusion, we affirm the District Court's rulings that the trapezoid easement was a general access easement and that the Bings are not entitled to the costs of Humbert Sr.'s deposition under either Rule 37(d), M.R.Civ.P., or § 25-10-201, MCA. However, pursuant to the mandatory language of Rule 37(d), M.R.Civ.P., we reverse the District Court's refusal to award Bings attorney's fees associated with the motion to compel, and remand for further proceedings consistent with this opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER