No. 01-293

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 110N

DEBRA L. LONG,

       Plaintiff and Respondent,

  v.

MELINDA A. DELAROSA, a/k/a MELINDA
DELAROSA FONTAINE, a/k/a MELINDA DELAROSA
TANNER, a/k/a MELINDA DELAROSA DAMASCUS;
JESSE FONTAINE; et al.,

       Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

           Quentin M. Rhoades, Sullivan, Tabaracci & Rhoades, P.C., Missoula,
           Montana

       For Respondent:

           P. Mars Scott, Patrick G. Sandefur, Law Offices of P. Mars Scott, Missoula,
           Montana

Submitted on Briefs:  October 4, 2001

Decided:      May   23,   2002

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Debra L. Long filed a complaint against Melinda Fontaine and Jesse Fontaine claiming constructive trust, resulting trust, quiet title, rescission of the promissory note, breach of contract, damages and punitive damages. During discovery in this matter, the Fourth Judicial District Court, Missoula County, issued an order requiring the Fontaines to deposit a lump sum of $12,960 plus $1,050 per month from and after December 2000. Appellants Melinda Fontaine and Jesse Fontaine filed an interlocutory appeal. We affirm.

¶3 The following issue is presented on appeal:

¶4 Did the District Court exceed its statutory authority by requiring the Fontaines to deposit money with the clerk of court?

BACKGROUND

¶5 In 1998, Melinda Fontaine and Jesse Fontaine hoped to buy a home on Zaugg Drive in Missoula, Montana, but were unable to secure financing. They then asked Debra L. Long to help. She agreed to assist them by securing a mortgage in the amount $118,000 so that the Fontaines could acquire the property. The Fontaines, in turn,

2

agreed to make the monthly mortgage payments of $1,080. Unbeknownst to Long, however, the loan was actually secured by a mortgage on her own home instead of the one on Zaugg Drive. Because of this, the Fontaines obtained title to the Zaugg Drive property free and clear of any encumbrances.

¶6 According to Long, the Fontaines never made any of the promised mortgage payments. On February 25, 2000, Long sued the Fontaines alleging constructive trust, resulting trust, quiet title, rescission of the promissory note, breach of contract, damages and punitive damages. The parties entered an Agreed Scheduling Order on August 9, 2000. In that order, the parties agreed to finish all discovery by January 2, 2001. Long scheduled a deposition of Melinda Fontaine for October 13, 2000. On the afternoon before the scheduled deposition, Melinda's attorney advised Long's attorney that Melinda would not be available for her deposition because she had been called out of town on urgent business. Long contends that she and several third parties notified her attorney that they had seen Melinda Fontaine in Missoula while she was purportedly out of town on business.

¶7 Long requested, and the court granted, a hearing to discuss the difficulties in scheduling the deposition. At the hearing on October 13, 2000, Melinda's lawyer acknowledged that they had canceled three of Melinda's depositions in three months. The court ordered Melinda to be available for a deposition on October 20, 2000. On the afternoon before the deposition, Melinda's attorney again called Long's counsel to advise them that Melinda would not

3

attend. Melinda's attorney stated that a psychiatrist had written a letter suggesting that she may commit suicide if she had to undergo a deposition.

¶8 On October 30, 2000, Long filed a motion for contempt and an imposition of sanctions for Melinda's failure to attend her depositions. Long's attorney also deposed Melinda's psychiatrist, Dr. Noel L. Hoell, M.D., to ascertain the nature of Melinda's illness and why it prevented her from giving a deposition. During the deposition, Dr. Hoell continued to express concerns that a deposition could exacerbate Melinda's emotional condition and that judging what safeguards might effectively protect her was difficult.

¶9 On November 15, 2000, Long filed a Motion and Brief for Order of Deposit or Delivery, pursuant to § 25-8-101, MCA, asking that the court order the Fontaines to place a deposit of $12,960 with the court and make monthly payments of $1,080 beginning after December 1999. On January 23, 2001, the District Court denied this motion. In denying her motion, the court held that Long did not meet the statutory requirements set forth in § 25-8-101, MCA.

¶10 On February 14, 2001, during a hearing regarding discovery, the District Court ordered the Fontaines to provide information on the insurance they were carrying on the Zaugg Drive property, the name of the property manager caring for the house and the dates Melinda Fontaine would be available for deposition. Melinda never complied with the court's order. Therefore, on March 6, 2001, the District Court found that Melinda had violated the court's

4

discovery orders and, pursuant to Rule 37(b), M.R.Civ.P., withdrew its January 23, 2001, Order and directed the Fontaines to deposit with the Clerk of Court $12,960 plus $1,050 per month from and after December 2000. The Fontaines appeal.

STANDARD OF REVIEW

¶11 The Fontaines ask us to review the District Court's conclusions of law de novo, citing *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. We agree that we review a trial court's conclusions of law de novo to see whether they are correct. *See Mularoni v. Bing*, 2001 MT 215, ¶ 22, 306 Mont. 405, ¶ 22, 34 P.3d 497, ¶ 22. This matter, however, implicates the District Court's imposition of sanctions for discovery abuse. When considering whether a district court imposed proper sanctions for discovery abuse, we determine whether the district court abused its discretion. *See Bulen v. Navajo Ref. Co.*, 2000 MT 222, ¶ 18, 301 Mont. 195, ¶ 18, 9 P.3d 607, ¶ 18. In these situations, we defer to the trial court because it is in the best position to tell whether a party has disregarded another party's rights and to determine which sanction is most appropriate. *Bulen*, ¶ 18.

DISCUSSION

¶12 Did the District Court exceed its statutory authority by requiring the Fontaines to deposit money with the clerk of court?

¶13 The Fontaines argue that the District Court exceeded its statutory authority by ordering the Fontaines to deposit funds pursuant to § 25-8-101, MCA. They argue that the facts presented

5

to the court did not meet the requirements of this statutory provision. Section 25-8-101, MCA, requires, in part, that, for a court to order a deposit or delivery, a party must admit "by the pleading or shown upon the examination of a party that he has in his possession or under his control any money . . . which belongs or is due to another party." The Fontaines contend that the court did not meet this requirement because they raised an affirmative defense that Long rejected the Fontaines' offer of full performance. This, they claim, eviscerates Long's contention that they possess money that belongs to Long. On January 23, 2001, the District Court agreed with the Fontaines and denied Long's request for a deposit of money. Long counters that the District Court's later order of March 6, 2001, effectively struck the Fontaines' affirmative defense as a sanction under Rule 37(b), M.R.Civ.P.

¶14 Long initially asked for a deposit pursuant to § 25-8-101, MCA, and the District Court denied this request. The court subsequently ordered the Fontaines to disclose certain information concerning the disputed property and arrange for Melinda's deposition. The Fontaines did not comply with these requests. Long then filed a motion for a sanction of $1,000 plus contempt of court against the Fontaines' for their failure to comply with the court's order.

¶15 The day after Long submitted her motion, the court issued the Order that the Fontaines now appeal. In the Court's order, it stated that:

6

Pursuant to Rule 37(b), M.R.Civ.P., the Court finds Defendant Melinda [S. Fontaine] has violated this Court's discovery orders of February 14, 2001, and accordingly,

IT IS HEREBY ORDERED that Defendants' failure to provide insurance information as requested and ordered by this court is a sufficient basis for the Court to withdraw its earlier order of January 23, 2001. Defendants are hereby directed and ordered to deposit with the Clerk of the above-entitled Court the sum requested by Plaintiff of $12,960 plus $1,050 per month from and after December 2000.

¶16 Although the District Court did not issue Long's requested sanction, a court may issue sanctions that the opposing party does not specifically request. *See McKenzie v. Scheeler* (1997), 285 Mont. 500, 512, 949 P.2d 1168, 1175. The court effectively reversed its order of January 23, 2001, and implicitly dismissed the Fontaines' affirmative defense. Rule 37(b)(2)(C), M.R.Civ.P., allows a court to do this by issuing "[a]n order striking out pleadings or parts thereof . . . or rendering a judgment by default against the disobedient party."

¶17 The purpose of imposing sanctions is to stop a party's dilatory tactics regarding discovery. *See Maloney v. Home & Inv. Center, Inc.*, 2000 MT 34, ¶ 19, 298 Mont. 213, ¶ 19, 994 P.2d 1124, ¶ 19. Here, the Fontaines have frustrated Long's repeated attempts to develop the facts surrounding this case. In an effort to facilitate discovery, the District Court ordered the Fontaines to provide certain information by a certain time. They did not do

this. Meanwhile, they possessed the Zaugg Drive property with little financial obligation. Long, on the other hand, remained responsible for mortgage payments on a mortgage on her own home. The Fontaines thus enjoyed a free ride that provided them with no incentive to speed along the litigation process.

¶18 A court should punish, rather than encourage, a party's abuse of discovery. *See Mularoni*, ¶ 45; *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 87, 293 Mont. 97, ¶ 87, 973 P.2d 818, ¶ 87. Ordering the Fontaines to begin making monthly payments was a sure way for the court to motivate them to quicken the discovery process. The Fontaines offer no argument why the court could not strike out their affirmative defense from the pleadings in this case. In fact, they fail to address the issue of sanctions at all.

¶19 A court should not deal leniently with a party's abuse of discovery that results in unnecessary delay. *See Delaware*, ¶ 87. The policy behind this judicial intolerance is the concern over crowded dockets and the need to maintain fair and efficient judicial administration of pending cases. *See Delaware*, ¶ 87. Given our policy on issuing sanctions for discovery abuses; the fact that the Fontaines fail to give any reason that sanctions are not appropriate in this case; and the Fontaines' lack of incentive to speed along the process, we conclude that the District Court did not abuse its discretion by sanctioning the Fontaines through its order to make a monetary deposit with the clerk of court.

¶20 We note, in passing, that the Fontaines also contend that the court's order to pay money to the clerk of court was subject to the

statutory requirements of an affirmative injunction.  The Fontaines cite no authority, however, that suggests how either sanctions or an order for deposit or delivery under § 25-8-101, MCA, implicates the statutory requirements for an injunction.  They simply cite *Grosfield v. Johnson* (1935), 98 Mont. 412, 422, 39 P.2d 660, 664, for the proposition that a court may grant a mandatory injunction to return the matter to the status quo although a party had already completed the act causing the injury before the suit was brought. Because the requirements for an injunction are part of a different chapter of the Montana Code than the requirements of either sanctions or an order for deposit, we conclude that the requirements of an injunction are inapplicable to the District Court's order.

¶21  Therefore, we conclude that the District Court did not exceed its statutory authority by requiring the Fontaines to deposit money with the clerk of court.

¶22  Affirmed.


/S/ JIM REGNIER


We Concur:

/S/ JIM RICE

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

Justice Patricia O. Cotter concurs.

¶23  I agree with the merits of the majority's legal analysis.  I write separately to state that I do not believe the District Court's order was an appealable order in the first place.  As the majority notes, the court's order was issued as a sanction, pursuant to Rule 37(b), M.R.Civ.P.  Rule 1, M.R.App.P., does not permit an appeal from an interlocutory order of sanctions.  Therefore, I would have dismissed the appeal for lack of jurisdiction.  However, because in either instance the ultimate result would be the same (the court's order of sanctions would stand), I concur.

/S/ PATRICIA COTTER

Justice Terry N. Trieweiler dissents.

¶23 I dissent from the majority opinion.

¶24 I cannot tell from the record exactly what the District Court did in this case, but I know it did not do what the majority gives it credit for doing. Specifically, there is no indication in the District Court order that it struck the Defendants' affirmative defenses as a sanction for failure to comply with discovery. In fact, the language from the District Court's order suggests just the opposite.

¶25 What the District Court did do is reverse its prior decision to deny Plaintiff's motion for an order requiring deposit or delivery pursuant to § 25-8-101, MCA. However, since the prior decision was correct, I conclude the District Court was without authority to do so.

¶26 On October 30, 2000, the Plaintiff moved the Court, pursuant to § 25-8-101, MCA, for an order requiring the Defendants to deposit in court $1,080 per month which Plaintiff contended was admittedly owed based on Defendants' answer to the complaint. On November 15, 2000, the Plaintiff enlarged her motion to request a lump sum deposit of $12,960 plus interest in addition to the previously requested monthly payment. However, after the issue was briefed by the parties, the District Court correctly concluded that it had no authority to order a deposit or delivery pursuant to § 25-8-101, MCA. In an order dated January 23, 2001, the Court noted that that statute authorizes the district court to order deposit or

11

delivery when a party admits that he or she owes another party money but that:

> Turning to the pleadings filed in this case, Fontaines have not admitted, and indeed have disputed Long's allegation that Fontaines owe Long funds . . . . In support of their argument Fontaines cite to their First Amended Answer and Counterclaims, specifically paragraphs 111 and 115, which dispute the validity of the contract upon which Long bases her claim. Essentially Fontaines claim that they owe Long nothing because Fontaines offered to fully perform under the contract and Long refused that offer of performance . . . . Under MCA § 25-8-101 a party must either admit that he or she is holding funds belonging to another, or examination of the party must show that the party is holding funds belonging to another. While it is true that Fontaines have admitted they have made no payments to Long since December of 1999, Fontaines have not admitted that they owed any payments to Long after December of 1999 . . . . Therefore the requirements of MCA § 25-8-101 have not been satisfied. It would therefore be inappropriate for this Court to order delivery or deposit of funds.

¶27 Nothing changed regarding the respective claims of the parties from January 23, 2001, when the District Court initially denied the motion for deposit or delivery, and March 6, 2001, when the District Court reversed itself. Nor, in reversing itself, did the District Court strike those affirmative defenses which were the bases for its previous denial of the Plaintiff's motion. In fact, doing so would have been the equivalent of default judgment and default judgment is something that Defendant Delarosa was threatened with by the District Court order if she did not comply with discovery efforts in the future.

¶28 In the order appealed from, the District Court stated:

> IT IS HEREBY ORDERED that Defendants' failure to provide insurance information as requested and ordered by this Court is a sufficient basis for the Court to withdraw its earlier order of January 23, 2001. Defendants are hereby directed and ordered to deposit with the Clerk of the above-entitled Court the sum

12

> requested by Plaintiff of $12,960 plus $1,050 per month from and after December 2000.
>
> IT IS FURTHER ORDERED that Defendant Melinda A. Delarosa shall advise this Court and opposing counsel of her next visit to Missoula, Montana. If none is currently scheduled, she is directed to pick a business day after March 30, 2001, and before May 31, 2001, when she will be in Montana for her deposition and the deposition of Plaintiff. Such disclosure shall be made before **FRIDAY, MARCH 16, 2001, AT 5:00 P.M.** If defense counsel does not provide the above information to Plaintiff's counsel on or before the above date, the Court will enter sanctions which may include surrender of the property to Plaintiff, *her default in this action* together with dismissal of her counterclaim. Rule 37(b), M.R.Civ.P. [Italics added.]

¶29 There is no mention made of affirmative defenses in the District Court's order. However, it seems to me the District Court had no intention of striking affirmative defenses. If it had intended to do so, it would have had no basis for threatening entry of default against the Defendant in the future. As pointed out in the District Court's previous order, Defendants' affirmative defenses were their only bases for concluding that the amount claimed was disputed in the first place.

¶30 For these reasons, I dissent from the majority opinion which, in order to affirm an arguably equitable result, gives the District Court credit for doing something it did not do and ignores the legally incorrect and statutorily unauthorized decision that it actually made.

/S/    TERRY    N. TRIEWEILER

13